UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| KENNETH M. PEARSON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 4:13-CV-0035-SEB-DML |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security, ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## Report and Recommendation on
## Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. (Dkt. 13) As addressed below, the Magistrate Judge recommends that the District Court REVERSE AND REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Kenneth M. Pearson, Jr. is not disabled.

## Introduction

Plaintiff Kenneth M. Pearson, Jr. applied in April 2010 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act. Acting for the Commissioner of the Social Security Administration following a hearing on January 9, 2012, an administrative law judge ("ALJ") found that Mr. Pearson is not disabled. The Appeals Council denied review of the ALJ's decision, rendering the ALJ's

decision for the Commissioner final.  Mr. Pearson filed this civil action under 42
U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Pearson asserts one error in the Commissioner's decision.  He contends that the ALJ failed properly to incorporate into his residual functional capacity determination (RFC) and his hypothetical to the vocational expert any functional limitations tied to Mr. Pearson's moderate difficulties in sustaining concentration, persistence, or pace.

## Standard for Proving Disability

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A) (DIB benefits);  42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1]  Mr. Pearson is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).  The Social Security Administration ("SSA") has implemented these

---

[1]  Two programs of disability benefits are available under the Social Security Act:  DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria., 42 U.S.C. § 1381 *et seq.*  The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits.  For SSI benefits, material identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on his age, work experience, and education (which are not considered at step four), and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

## Analysis

I. **The ALJ's Sequential Findings**

Mr. Pearson was born in March 1961, was 41 years old as of the alleged onset of disability, and 51 years old at the time of the ALJ's decision. He applied for disability in 2010, when he was 49 years old. Mr. Pearson quit high school in the 11th grade to join the military, and served for two years. At some point after his

military service, Mr. Pearson worked in a factory for about five years. He also periodically worked in construction, property maintenance, and as a certified nursing assistant. Mr. Pearson has a history of incarceration, including from 2005 to some point in 2008, and in 2009 to May 2010.

At step one, the ALJ determined that although Mr. Pearson had worked since July 1, 2002, his alleged onset of disability, the earnings from that work were not at a level constituting substantial gainful activity. Earnings records showed work income in 2004 and in 2005 and medical records referred to work activities in 2008, including maintenance work at an apartment complex. Mr. Pearson testified at the hearing that in 2008 he also did vinyl siding work during the summer and worked about 36-40 hours per week. At step two, the ALJ identified degenerative disc disease, a left wrist fracture, bipolar disorder, PTSD, personality disorder, and a history of polysubstance dependence as severe impairments, and decided at step three that no listings were met. Mr. Pearson does not challenge the ALJ's findings at step one, two, or three.

The ALJ next determined Mr. Pearson's residual functional capacity (RFC) for purposes of conducting the required analysis at steps four and five. She decided that Mr. Pearson is capable of work at the medium level of exertion—he can lift and carry 25 pounds frequently and 50 pounds occasionally and can sit, stand, or walk eight hours of the work day. She determined that Mr. Pearson's mental impairments impose moderate restrictions on social functioning and in maintaining concentration, persistence, or pace. To accommodate Mr. Pearson's mental

impairments, the ALJ's RFC limits him to "simple, routine, and repetitive work tasks" and work that requires no interaction with the public and only occasional interaction with co-workers. (R. 19). In her hypothetical to the vocational expert, the ALJ asked the vocational expert whether there were jobs available for a person matching Mr. Pearson's vocational profile who could perform medium work and "is limited to unskilled work and occasional contact with coworkers and no contact with the public." (R. 57). The VE identified several types of jobs that are available locally (meaning within Jefferson County, Indiana and the surrounding area) and within the national economy, including laborer and maintenance jobs, packing jobs, and assembler jobs. Based on the opinion of the VE, the ALJ determined that there were significant numbers of jobs in the relevant economy that Mr. Pearson could perform, and thus that he is not disabled.

## II. Mr. Pearson's Assertion of Error

Mr. Pearson asserts that the Commissioner's decision is erroneous and violates the *O'Connor-Spinner* line of cases because the limitation in the RFC to "simple, routine, and repetitive tasks" and the ALJ's corresponding description of "unskilled work" in the hypothetical to the vocational expert does not appropriately capture his moderate difficulties with concentration, persistence, or pace.

## III. There is insufficient correlation between Mr. Pearson's deficiencies in CPP and the limitation to unskilled work.

In *O'Connor-Spinner v. Astrue,* 627 F.3d 614 (7th Cir. 2010), the Seventh Circuit determined that the ALJ erred in relying on jobs information provided by a vocational expert because the ALJ had determined that the claimant had moderate

difficulties in concentration, persistence, or pace ("CPP"), but none of the series of hypotheticals posed to the VE specifically noted this limitation. Where a claimant's moderate difficulties in CPP stem from anxiety or other stress, for example, a hypothetical that references low-stress work, and a VE's opinion based on that hypothetical, sufficiently account for the mental limitation. *Id.* at 619. But, the court ruled, an ALJ's hypothetical to a VE limiting a claimant to "unskilled" work does not necessarily exclude from the expert's consideration jobs that a person with moderate difficulties relating to CPP cannot perform. Without something else in the record suggesting a tie between a restriction to unskilled work and the source of the claimant's difficulties in this area, and an indication that the VE accounted for the claimant's particular deficiencies, remand is appropriate. *See id.* at 620 (noting other cases in which reference to unskilled work insufficiently accounts for a claimant's moderate limitations on concentration, persistence, or pace).

The ALJ's decision suffers from the paradigmatic *O'Connor-Spinner* error. The ALJ's RFC and her hypothetical question to the VE limit Mr. Pearson to unskilled work but do not account in any other manner for Mr. Pearson's particular difficulties with concentration, persistence, or pace. Indeed, directly contrary to the teaching of *O'Connor-Spinner,* the ALJ's decision describes the limitation to unskilled work as *necessarily* accommodating moderate difficulties relating to CPP. The decision states:

> The claimant also has moderate limitations in his ability to perform work-related activities related to concentration, persistence, or pace, and social functioning. *Therefore,* the undersigned has limited the claimant to unskilled work which involves only simple and routine

7

tasks, and only occasional contact with co-workers, and no contact with the public.

(R. 23) (emphasis added). This is error. *See O'Connor-Spinner v. Astrue,* 627 F.3d 614, 620 (7th Cir. 2010) ("In most cases . . . employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."); *Yurt v. Colvin,* 2014 WL 3362455 at *7-8 (7th Cir. July 10, 2014) (unpublished) (an RFC for unskilled work "by itself does not provide any information about [the claimant's] mental condition or abilities"); *Warren v. Colvin,* 2014 WL 3409697 at *4 (7th Cir. July 15, 2014) (unpublished) (a limitation to "simple, repetitive tasks" does not itself account for limitations on CPP; ALJ should have addressed how the claimant, despite her moderate limitations, could still maintain sufficient CPP for unskilled work).

The Commissioner argues that the ALJ's limitation to unskilled work in her RFC and hypothetical to the VE were appropriate in this case to capture Mr. Pearson's particular difficulties in CPP because the ALJ was relying on the opinion of Dr. William Shipley, Ph.D. who "translated" Mr. Pearson's deficiencies and concluded that Mr. Pearson "is able to do unskilled tasks." (Dkt. 27 at p. 5).[2] Dr.

---

[2] This is a somewhat strained reading of the ALJ's decision. As the quote, *supra* at pp. 7-8, from the ALJ's decision demonstrates, the ALJ on her own and without mentioning any reliance on Dr. Shipley expressed that a limitation to unskilled work captures moderate deficiencies in CPP.
    The Commissioner also argues that because the RFC and the hypothetical to the VE matched, this avoids the *O'Connor-Spinner* problem. (Dkt. 27 at pp. 3-4). That argument is rejected. An error in the RFC is not cured by compounding the same error in the hypothetical to the VE, or *vice versa*.

Shipley completed a Mental Residual Functional Capacity Assessment form on which he checked boxes describing areas of functioning for which he found Mr. Pearson to be "moderately limited." He checked boxes that Mr. Pearson was moderately limited in the following three areas related to CPP:

- The ability to maintain attention and concentration for extended periods.
- The ability to work in coordination with or proximity to others without being districted by them.
- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

(R. 466-467). In the narrative section of the form, Dr. Shipley summarized findings from a mental status examination conducted by agency psychologist Dr. Jill Christopher on June 23, 2010. The summary addresses Mr. Pearson's social functioning and that Mr. Pearson's "memory was intact as well as his math skills," but provides no insight about how or why Mr. Pearson's mental impairments affect his attention, concentration, or pace. The summary ends with a statement that Mr. Pearson "is credible and is able to do unskilled tasks." Dr. Shipley provided no explanation for his correlation of "unskilled tasks" with Mr. Pearson's moderate limitations in attention, concentration, and pace. There is no explanation why in Mr. Pearson's case his difficulties with CPP—which Dr. Shipley identified as including difficulties maintaining attention and concentration and performing at a consistent pace—would not interfere with unskilled work. *See Warren,* 2014 WL 3409697 at *8 ("[W]e have repeatedly rejected the notion that . . . simple, routine

9

tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.")

The facts in this case are materially identical to those the Seventh Circuit recently examined in *Warren,* in which the court rejected the same argument the Commissioner makes here. In *Warren,* the reviewing psychologist checked boxes on the Mental Residual Functional Capacity (MRFC) form noting numerous limitations relating to CPP but in his narrative "concluded broadly" that the claimant could perform unskilled work. 2014 WL 3362455 at *8. The court determined that the psychologist's narrative conclusion was not supported by his findings. Thus, an "accurate and logical bridge" between the evidence of mental impairment and its functional limitations and the claimant's capacity for unskilled work was lacking. Because the ALJ simply credited the psychologist's opinion without explanation or discussion, the logical bridge remained unbuilt. *Id.*

Here, there is nothing in Dr. Shipley's MRFC form or anywhere within the ALJ's decision that provides an explanation how limiting Mr. Pearson to unskilled work accommodates his particular difficulties with CPP or takes account of stressors or other factors that trigger Mr. Pearson's difficulties with CPP. Under *O'Connor-Spinner* and its progeny, therefore, the Commissioner's decision should be REVERSED and REMANDED.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE and REMAND the Commissioner's decision. Any

10

objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. The parties should not anticipate any extensions of time for briefing any objections.

IT IS SO RECOMMENDED.

Date: 08/07/2014

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

**Distribution:**

**All ECF-registered counsel of record via email generated by the court's ECF system**